Peter M. Horn, J.
This motion is brought by the respondent for an order:
1. Setting aside the decision in favor of the petitioner, dated September 27, 1966, in the interest of justice, on the grounds that said decision is contrary to law, contrary to the weight of the evidence; on the further grounds of newly discovered evidence, and surprise, and on all the grounds stated in the CPLR, and
2. Directing that a new hearing be held herein for the reasons set forth hereinabove, or
3. Setting aside the decision of Mr. Justice Peter M. Horn and rendering a decision in favor of the respondent on the ground that respondent is entitled to judgment as a matter of law, or
4. Granting respondent such other, further and different relief as may be just, together with the costs of this motion.
The original petition was filed on September 9, 1966 by the mother of a female child born out of wedlock on the 2d day of October, 1961, for an order establishing the paternity of the child and to compel support under article 5 of the Family Court Act. At the time the child was born, the petitioner was an infant, 15 years of age. She was born March 27, 1946 and attained the age of 21 years on March 27, 1967.
On September 27, 1966 the respondent appeared before the court to answer the allegations of the petition, was advised of the nature of the proceedings, and his right to request a postponement to procure an attorney to represent him. The respondent waived his right to counsel and asked to proceed that day. On being advised by the court that the petitioner alleged that she gave birth to a child on the 2d day of October, 1961 and that the respondent was the father, in answer to the court’s question: “ Do you admit or deny the paternity of this child? ”, he answered: “I don’t deny it.” When asked further by the court: “ So you admit paternity? ”, the respondent answered: “ Yes.” The court then inquired into the needs of the petitioner in terms of the infant’s support and the ability of the respondent to meet an order of support, and made an order of $20 a week for the support of the infant child effective October 3,1966.
*61 On September 12,1967, the respondent was brought before the court for failure to meet the order. The support bureau’s statement indicated he then was in arrears in the sum of $960. When advised of his right to counsel and to produce witnesses in a hearing for a violation of the order to provide support, the respondent asked for an adjournment and stated that his alleged attorney was engaged in the criminal court. When the court indicated that the adjournment would be granted but requested that he provide some funds in payment of the order, and the court' reminded him that he had admitted paternity, the respondent for the first time stated: “No, I did not.” When he was reminded that the same Judge had questioned him on September 22, 1966 when he had admitted paternity, the respondent replied: “ I didn’t understand, Your Honor * * * I have asked the mother for a blood test for the past five years.” The court did then remind him that he did not ask for a blood test on the date of the admission. The petitioner, hearing the statement of the respondent replied: “First off I have — he hasn’t asked me for a blood test. As you say, this started a couple of weeks ago. If he didn’t know the baby was his.” The petitioner then stated: “If it is a blood test he wants, I "have no objection.” Later the respondent stated: “I want to say one thing. I have been giving this lady money. She said herself I know you can’t pay me $20.00 a week. Why am 1 just coming here now?- * # * I have been giving her money. Just two weeks ago I gave her $15.00 and she refused to take it because I didn’t bring it, I sent it.” The court then inquired of the petitioner: “has he paid you money since I made the order?” She responded: “August 19, he gave me a check, Your Honor * * * of $15.00. He sent it by someone and I refused to take it by that someone so he brought it himself.” On further inquiry as to whether this was all he paid, the respondent replied: “ It is not so. I still have a couple of cancelled checks * * * Your Honor, exactly — I have been giving her from time to time when I went there I gave her $5.00, $10.00, sometimes I gave $15.00.” When asked what the total was, the respondent replied: “ Your Honor, I never kept any record of it, telling the truth. ’ ’
The matter was then adjourned to September 28, 1967 for the respondent’s attorney to appear. The respondent appeared on -September 28, 1967 with a new attorney who requested an adjournment to October 18, 1967. On that date the respondent appeared with his present attorney, through whom the respondent claimed he had made certain direct payments but since *62 the attorney advised the Judge that she was challenging the finding and would move for a new hearing, the arrears were held in abeyance, the order was continued and the Support Bureau was directed to hold funds pending a further order of the court and contingent upon the determination of the motion, which was to be made returnable in not less than 30 days. The court also provided, by order, that on his default a cash bond was to be filed in the sum of $500 with an alternative of 20 days in jail to secure future payments.
The respondent does not indicate in his moving papers the rules he is proceeding under. The court can but conclude that he is proceeding under CPLR 4404 (subd. [b]) and 5015 (subd. [a], pars. 2 and 4). As to CPLR 4404, the court cannot entertain the motion since CPLR 4405 provides that such a motion shall be made before the Judge who presided at the trial within 15 days after decision. As to the latter rule, the motion is based on alleged newly discovered evidence under paragraph 2 and that the court lacked jurisdiction under paragraph 4. The moving papers fail to allege any newly discovered evidence, hence the sole question to be resolved is whether the court lacked jurisdiction to make the orders of paternity and support.
The respondent urges in support of the point of lack of jurisdiction that section 517 of the Family Court Act provides in part: “ (a) Proceedings to establish the paternity of the child may be instituted during the pregnancy of the mother or after the birth of the child, but shall not be brought after the lapse of more than two years from the birth of the child, unless paternity has been acknowledged by the father in writing or by furnishing support ”.
That five years elapsed between the birth of the child and the commencement of the proceedings, and since the child has never been acknowledged by him “ in writing ” or by “ furnishing support ”, either one of said conditions being necessary to toll the two-year Statute of Limitations provided for, the court lacked jurisdiction to make the orders. The petitioner urges, however, that since she was a minor the statute was tolled during infancy by CPLR 208 — hence there was no need for the court to hear evidence as to an acknowledgement 1 ‘ in writing or by furnishing support.”
The petitioner also points out that the position taken by the respondent, that he was not fully advised of the allegations of the petition, cannot be taken seriously. It is patently clear to the court that the respondent knew the nature of the proceeding and freely admitted to being the father of the child. *63 The respondent did not take an appeal pursuant to section 1013 of the Family Court Act and since the time to appeal expired over one year before this motion, it is obvious that the respondent is attempting to do by indirection what he cannot do directly.
The right to commence a filiation proceeding is strictly statutory. The proceeding “is civil” (see 2d Rep. of Joint Legis. Committee on Court Reorganization, 1962, p. 94). CPLR 101 states: ‘1 the civil practice law and rules shall govern the procedure in civil judicial proceedings in all courts of the state and before all judges, except where the procedure is regulated by inconsistent statute.”
Section 165 of the Family Court Act provides: ‘ ‘ Procedure. Where the method of procedure in any proceeding in which the family court has jurisdiction is not prescribed by this act, the procedure shall be in accord with rules adopted by the administrative board of the judicial conference or, if none has been adopted, with the provisions of the civil practice act to the extent they are suitable to the proceeding involved. Upon the effective date of the CPLR, where the method of procedure in any proceeding in which the family court has jurisdiction is not prescribed, the provisions of the civil practice law and rules shall apply to the extent that they are appropriate to the proceedings involved.”
Sidney B. Schatkin, Esq., who is a recognized authority in the field of paternity proceedings, in his latest edition of Disputed Paternity Proceedings (4th ed., p. 386) states: “ And the argument that the statute of limitations is tolled due to the infancy of the petitioner, is answered by Family Court Act, Section 522, which states in part: ‘ Proceedings to establish the paternity of the child and to compel support under this article may be commenced by the mother whether a minor or not’” (emphasis supplied) and quotes the following case in support of his position. The only reported decision on this point is the Matter of Anonymous v. Anonymous (48 Misc 2d 949, 950) where a motion to dismiss the proceeding upon the ground that it was barred by the Statute of Limitations, was granted by the court, which stated: “No merit is found in the petitioner’s contention that the Statute of Limitations must be pleaded by way of affirmative defense. While the defense of the statute is an affirmative one, a motion to dismiss is a proper method of raising the bar (CPLR 3211, subd. [a], par. 5). Petitioner’s further contention that being an infant, the statute is tolled to the majority of the petitioner is without validity. Section 522 of the Family Court Act permits the mother, even *64 if a minor, to originate the proceedings. If infancy in paternity matters were intended to toll the statute, the Legislature could have so provided. CPLR 201 states clearly that1 No court shall extend the time limited by law for the commencement of an action. ’ An action includes a special proceeding such as herein; the words plaintiff and defendant include petitioner and respondent, and the word complaint includes a petition in a special proceeding (CPLR 105, subd. [b]).”
Section 201 of the former Civil Practice Act, provided: ‘ ‘ Infant as a party. Where an infant has a right of action he is entitled to maintain an action thereon, and the same shall not be deferred or delayed on account of his infancy.”
Section 60 of the former Civil Practice Act provided: “ If a person entitled to maintain an action * * * is at the time when the cause of action accrues, either:
1. Within the age of twenty-one years; or
2. * * *
3. * * *
and if the time otherwise limited in this article for commencing the action is five years or more and if such time, expires before the disability ceases, or less than five years thereafter, the time otherwise limited shall be extended in consequence of such disability so as to permit the action to be commenced after the expiration of the time otherwise limited but not more than five years after the disability ceases; but if the time otherwise limited is less than five years, such time shall be extended by the period of disability ”.
In the new CPLR, the former provisions of section 201 of the Civil Practice Act have been omitted except as to when joinder is unnecessary with respect to a guardian of the property of an infant, which is contained in CPLR 1004 and which has no application to this question.
CPLR 208 now provides: “ Infancy, insanity or imprisonment. If a person entitled to commence an action is, at the time the cause of action accrues, under the age of twenty-one years, insane or imprisoned on a criminal charge or conviction for a term less than for life, and the time otherwise limited for commencing the action is three years or more and expires no later than three years after the disability ceases, or the person under the disability dies, the time within which the action must be commenced shall be extended to three years after the disability ceases or the person under the disability dies, whichever event first occurs; if the time otherwise limited is less than three years, the time shall be extended by the period of disa *65 bility. The time within which the action must be commenced shall not be extended by this provision beyond ten years after-- the cause of action accrues, except where the person was under the age of twenty-one years. This section shall not apply to an action to recover a penalty or forfeiture, or against a sheriff or other officer for an escape.”
The obvious reason of not continuing the language of section 201 of the Civil Practice Act in the new CPLR is that an infant, at common law, had the right to maintain an action, and, being substantive law, was deleted from the CPLR.
The policy of New York, which is consistent with many other jurisdictions, has been to protect disabled persons (infants, insane persons and persons in jail) from losing their causes of action by a Statute of Limitations while 'Lhey are disabled. (Second Preliminary Report of Advisory Committee on Practice and Procedure; N. Y. Legis. Doc., 1958, No. 13.) This is done by tolling the Statute of Limitations until the disability ceases to exist. This policy was first stated back in 1788 in one of the oldest New York statutes (L. 1788, ch. 12). It has been followed down through the years and now is part of the CPLR. In the case of infancy the committee states the infant may prosecute his action by a guardian ad litem or a parent during his infancy. However, despite this, the statute does not run because an infant or insane claimant should not be penalized by an omission on the part of his guardian or committee to sue on his claim {supra, p. 58).
With this as a basic policy, we must examine similar provisions of Family Court Act which govern a paternity proceeding. Section 517 of the Family Court Act provides: ‘ ‘ Time for instituting proceedings, (a) Proceedings to establish the paternity of the child may be instituted during the pregnancy of the mother or after the birth of the child * * * unless paternity has been acknowledged by the father in writing or by furnishing support-. ’ ’
The other relevant provision of that act, section 522 provides: “Persons who may originate proceedings. Proceedings to establish paternity of the child and to compel support -under this article may be commenced by the mother, whether a minor or not, by the child’s guardian or other person standing in a parental relation or being the next of kin of the child, or by any authorized representative of an incorporated society doing charitable or philanthropic work, or if the mother or child is or is likely to become a public charge on a county, city or town, by a public welfare official of the county, city or town where the mother resides or the child is found.”
*66 The problem, presented is whether, because a minor muy bring an action in her own name under section 522 of the Family Court Act, must she bring it in the two-year period prescribed in section 517 of the Family Court Act or have the proceeding barred?
Under the common law, the legal status of a child born out of wedlock was variously described as filius nullius — nobody’s child; filius populi — the child of the people; or heres nullius — nobody’s heir. He was kin to no one; “ not of the blood of his father * * * a stranger in blood.” He was not even considered the lawful child of his own mother, and could not inherit from her. He could not inherit real property from his own issue. He had no heirs but those of his own body. If he died without lawful issue, any real or personal property he possessed escheated to the Crown. He could inherit or acquire nothing except by his own efforts. There were many other disqualifications and if the illegitimate child was unfortunate enough to be born a girl, she was not even considered a person. The unfortunate child born out of wedlock in England common-law times, was entitled to support from neither father nor mother. “ The child of nobody was as regards its support, the child of the people, and the people in the shape of the overseers had to undertake its succour.”
Since the Statutes of Elizabeth (18 Eliz. I, ch. 3) over 390 years have passed — years that have been marked by vast social progress and legal reform. Although the legal and social distinction between legitimate and natural children still persists, certain specific legal rights, withheld by the common law, have been conferred upon the child by statute. (Schatkin, Disputed Paternity Proceedings [4th ed.], pp. 34 to 36.)
Section 522 of the Family Court Act merely creates a right in an infant to initiate a proceeding to establish paternity and to compel support, and names the persons who may commence the proceeding. Granting a minor the right pursuant to this section to bring an action while a minor, does not mandate an infant to do so during the two-year period dating from the birth of the child. Granting an infant the right to commence a paternity proceeding during infancy is provided since the need to arrange and pay for her confinement and the care of a baby when born is of such urgency that in many cases it cannot wait the delay until the mother has reached her majority. It is inconceivable that the Legislature would compel either the minor or a guardian in her behalf to commence such a proceeding while the mother is still in infancy in such an important proceeding whereas in other simple civil actions the minor *67 would be protected during infancy and be permitted to bring an action within the statutory period after reaching her majority.
The rights of an infant under sections 201 and 60 of the Civil Practice Act were interpreted by the courts to mean that a minor was allowed to bring an action while a minor and need not wait until reaching full age before beginning such action but had the legal right to delay any action for recovery until one year after he had attained the age of 21 years. (Frehe v. Schildwachter, 289 N. Y. 250; Russo v. City of New York, 258 N. Y. 344; Goishen v. Samor Realty Co., 167 Misc. 477.)
It is clear that it was the intent of the Legislature in enacting CPLR 208 to give the same protection to an infant mother in respect to a paternity proceeding and this court so holds. In so doing it cannot follow the holding in Matter of Anonymous v. Anonymous (48 Misc 2d 949, supra).
The holdings in the cases cited by the attorney for the respondent of Rheel v. Hicks (25 N. Y. 291); Schneider v. Kennat (267 App. Div. 589); Matter of Whalen v. Allied Messenger Serv. (12 A D 2d 1, 3); Matter of O’Esau v. Bliss Co. (188 App. Div. 385); Matter of Cheesman (236 N. Y. 47, 49); Mossip v. Clement & Co. (256 App. Div. 469, 471-473) are not applicable to or are distinguishable from the case at bar.
The motion is denied, the proceeding is to be placed on the calendar by the Cleric of the court for enforcement of the order of support and all arrears.